**CHICAGO TITLE INSURANCE COM-PANY, Plaintiff,**

v.

**AETNA CASUALTY AND SURETY COMPANY, Defendant and Third-Party Plaintiff,**

v.

**Bruno E. L. MIOTTA, Joseph Venneri, and John B. Fisher, Third-Party Defendants.**

**Civ. A. No. 4859–A.**

United States District Court, E. D. Virginia, Alexandria Division.

April 23, 1970.

---

16. See Schawartzberg v. United States, 379 F.2d 551, 552 (2d Cir. 1967).

James H. Simmonds, Arlington, Va., Hugh C. Cregger, Jr., Arlington, Va., for defendant and third party plaintiff Aetna Casualty and Surety Co.

Mark P. Friedlander, Arlington, Va., for third party defendant Fisher.

## MEMORANDUM

WALTER E. HOFFMAN, Chief Judge.

In this action Chicago Title Insurance Company (Chicago Title), an Illinois corporation engaged in the business of insuring titles of real estate for owners, noteholders, etc., claims that Aetna Casualty and Surety Company (Aetna) is indebted to Chicago Title in the sum of $13,000.00 by reason of an indemnity bond issued by Aetna. We conclude that Chicago Title may recover the full amount in controversy.

Chicago Title is the successor, by virtue of a merger, to Kansas City Title Insurance Company (Kansas City Title). During the year 1964 and at all subsequent dates pertinent thereto, Chicago Title and its predecessor were insuring titles to real estate. The third-party defendants, Miotta and Venneri, became the owners of certain vacant real estate in the City of Alexandria, Virginia, on or about July 27, 1964, and contemporaneously therewith arranged to build an apartment on the property. To finance the project Miotta and Venneri arranged for a construction loan in the sum of $193,000, which loan was to be secured by a first deed of trust. By deed of trust dated October 21, 1964, recorded October 28, 1964, the financing was consummated and the project was underway. The lender of the money required a title policy and, on October 5, 1964, Kansas City Title committed itself to insure "National Savings and Trust Company and/or The Franklin Life Insurance Company" in the sum of $193,000 as the holders of the trust indebtedness. All of the title transactions and applications for title insurance were handled by Jack M. Pickett, an attorney employed by Miotta and Venneri, who was on the approved list of attorneys as issued by Kansas City Title.

During the course of construction it became necessary for Miotta and Venneri to acquire additional funds. By deed of trust dated October 6, 1965, recorded October 8, 1965, the subject property was conveyed to named trustees to secure an indebtedness in the sum of $25,000, payable to the order of Melvin L. Fabina, Arlene Fabina, and Auna R. Fabina. The indebtedness fell due 180 days after October 6, 1965, and the deed

of trust specifically authorized the trustees "to subordinate this deed of trust to the permanent loan in the amount of $193,000.00, without the necessity of joinder or approval of the holder or holders of the note hereby secured in said subordination agreement." The Fabina noteholders also required title insurance and, on October 8, 1965, a title policy was issued in the sum of $25,000, subject to minor exceptions not pertinent hereto and the prior deed of trust securing the sum of $193,000 which was the construction loan.

When Attorney Pickett re-examined the title to the property, he discovered that a memorandum of mechanic's lien had been recorded on October 6, 1965, in favor of The Charles-Clarke Corporation in the sum of $9,196.58, plus interest from August 30, 1965. In closing the Fabina deed of trust arrangements, Pickett deducted, or otherwise obtained from Miotta and Venneri, the sum of $10,310.00, which he determined would be the appropriate amount to be held in escrow pending the outcome of the mechanic's lien litigation. He forwarded his check in that amount to the local agent for Kansas City Title.[1] Feeling that it was fully secured by the escrow deposit of $10,310.00, Kansas City Title issued its policy to the Fabinas as noted above. The title policy made specific reference to the mechanic's lien memorandum but added, "Kansas City Title Insurance Company insures against any loss or damage by virtue of the existence of this claim."

Within a few days thereafter, Miotta and Venneri, apparently in need of the $10,310.00, arranged with one Stanley Bender, a prominent and purportedly wealthy contractor in the Washington area, to apply to Aetna, together with Miotta and Venneri, for a "Court Bond-Judicial Proceedings." On the face of the application it is stated that the purpose of the bond is "Release of Lien." The application gave Pickett's name, ad-

dress and telephone number as the attorney handling the matter for the applicants. The application was signed by Venneri, Miotta and Bender on October 13, 1965.

Pickett prepared the indemnity bond. It specifically refers to the fact that Kansas City Title had been requested to issue its policy of title insurance "insuring the title to property" and then, after describing the property, the bond makes reference to the memorandum of mechanic's lien filed by the Charles-Clarke Corporation in the sum of $9,196.58 with interest from August 30, 1965. It then states that Kansas City Title has refused to issue its policy without exception to the lien, and that Kansas City Title requires the bond to protect itself "in guaranteeing said title in the face of the aforesaid lien." Following that is the save harmless agreement which covers not only the mechanic's lien principal, interest, costs, etc., but also includes indemnification for costs, attorney's fees, etc., for "any other suit covering the subject matter." The bond was executed by Venneri and wife, Miotta, and Aetna's authorized attorney-in-fact on October 15, 1965.

Presumably the bond was to have been given before the Kansas City Title policy was issued to the Fabinas. This is why Pickett deducted $10,310.00 at the time of settlement. After the bond was executed, Pickett delivered same to the local agent for Kansas City Title and, in return, received two checks aggregating $10,310.00 for the benefit of Venneri and Miotta. Thus, the full amount of the escrow deposit was returned and, in lieu thereof, Kansas City Title held the indemnifying bond which gives rise to this action.

On March 15, 1966, Kansas City Title issued its permanent title policy covering a new deed of trust dated March 8, 1966, in the sum of $193,000, with The

---

1. In forwarding the check, Pickett said: "You are to hold the $10,310.00 in escrow until such time as the mechanic's lien of Charles Clarke Corp. is released or no longer a valid lien and then return the money to me."

Franklin Life Insurance Company, the noteholder, as the named insured.[2] This policy noted that an action had been filed in the state court to enforce the mechanic's lien, and that the title policy insured "against loss or damage resulting from the enforcement of any judgment rendered against the insured premises" in that suit. At approximately the same time as the new deed of trust in the sum of $193,000 was recorded on March 15, 1966, the construction loan deed of trust in the same amount was released. Likewise, by instrument dated February 28, 1966, recorded March 15, 1966, the trustees and noteholders under the Fabina deed of trust, dated October 6, 1965, subordinated said deed of trust to the permanent deed of trust in the sum of $193,000 securing The Franklin Life Insurance Company.

By a subsequent deed of trust dated and recorded on March 31, 1966, Venneri, his wife, and Miotta conveyed the property in trust to secure Alex Dandy and wife the sum of $60,000. No title policy was issued as to this trust deed. Later, threatened with foreclosure, Venneri, his wife, and Miotta conveyed the property to John B. Fisher by deed of general warranty, but subject to the three deeds of trust then outstanding. No title policy was issued to Fisher.

The state court chancery action to enforce the mechanic's lien pursued a slow course by reference to a Commissioner. Finally, on February 28, 1968, a judgment was rendered in the case of Charles-Clarke Corporation v. Joseph Venneri, et al., in the sum of $9,196.58, with interest from September 15, 1965, plus court costs. There was no appeal from the final decree entered therein. The judgment lien became a *first* lien upon the real estate upon which the apartment was constructed and was *prior* to the three outstanding deeds of trust. The total amount of the judgment, interest, and all costs aggregated $11,071.25.

By letter dated March 1, 1968, the local agent for Chicago Title wrote to Aetna's agent advising that a final judgment had been entered and that counsel for Charles-Clarke Corporation was about to bring an action to sell the real estate which Kansas City Title had unconditionally insured as to said mechanic's lien or any judgment entered thereon. Aetna was further notified that if Aetna did not pay off the judgment at once, Chicago Title would pay and thereafter bring an action on the indemnifying bond dated October 15, 1965. Aetna declined to pay the Charles-Clarke Corporation. Chicago Title paid the Charles-Clarke Corporation in full and, by instrument dated March 6, 1968, recorded May 13, 1968, took an assignment of all right, title and interest in the judgment. To comply with its insuring agreements, Chicago Title thereafter, by instrument dated April 8, 1968, recorded May 13, 1968, subordinated the judgment to The Franklin Life Insurance Company deed of trust in the sum of $193,000, and the Fabina deed of trust in the sum of $25,000. The judgment was not subordinated to the Dandy deed of trust in the sum of $60,000.00, and of course is prior to that deed of trust and the conveyance to John B. Fisher.

Chicago Title brought the instant action against Aetna seeking the recovery of the sum of $11.071.25 paid to Charles-Clarke Corporation, plus $360.00 attorney's fees and costs incurred prior to the institution of this action, plus $1,525.25 attorney's fees and costs for services and expenses rendered in this

2. Aetna attempts to make some issue out of the fact that the first title policy was for "National Savings and Trust Company and/or The Franklin Life Insurance Company," whereas the title policy covering the permanent loan insured only The Franklin Life Insurance Company.

Aetna overlooks the accepted procedure in handling construction loans where the services of a banking institution are required as the money is paid out during the process of construction. The point is frivolous.

proceeding,[3] together with interest on $11.071.25 from March 4, 1968, the latter being the date of payment of the judgment.

We believe that the claimed fees and expenses are proper and reasonable. The total amount well exceeds the sum of $13,000 as stated in the indemnifying bond, but we construe the bond as imposing a maximum fixed liability in the sum of $13,000. Of course, Chicago Title will be entitled to interest from the date of the entry of the judgment which will be entered upon presentation, and Aetna is also responsible for the taxable court costs of this action.[4]

Aetna's principal contention is that plaintiff's subordination of the mechanic's lien to the Fabina deed of trust, without the consent of Aetna, automatically releases Aetna from its obligation under the indemnifying bond. Aetna urges that (1) it was a surety and nothing more; (2) since a surety is entitled to be subrogated to all rights available to the creditor to obtain payment from the person primarily liable for the debt, Aetna was entitled to be subrogated to plaintiff's position as to any security or means of payment which came under plaintiff's control; (3) the mechanic's lien judgment which was assigned to plaintiff was a good and valid first lien; (4) under the law of suretyship plaintiff, in effect, held this first lien in a fiduciary capacity for Aetna; (5) there is serious doubt as to the validity of the Fabina deed of trust; (6) plaintiff, in voluntarily subrogating the mechanic's lien judgment to the Fabina deed of trust, altered Aetna's position with regard to the mechanic's lien; and (7) there was no demand made by the noteholders under the deeds of trust to pay the mechanic's lien judgment and take an assignment of same.

We view the defenses as frivolous. Assuming arguendo that Aetna was nothing more than a surety for Venneri and Miotta, there is still a basic fallacy in Aetna's position. Aetna assumes that when Chicago Title acquired all right, title and interest in the Charles-Clarke Corporation judgment, Chicago Title could have used the first priority position of this lien to the detriment of the very deeds of trust it had contracted to protect from this lien. Prior to the receipt of the indemnity bond from Aetna, Chicago Title had insured the holders of the indebtedness under both the first and second deeds of trust against any *loss or damage* from this lien. Chicago Title's position, when it acquired the judgment lien from Charles-Clarke Corporation, was already effectively subordinated to its policy holders.

While Aetna, as surety, may step into the shoes of Chicago Title, Aetna's status as surety may rise no higher than that of Chicago Title. Western Casualty and Surety Company v. Brooks, 362 F.2d 486 (4 Cir., 1966); Barton v. Brent, 87 Va. 385, 13 S.E. 29 (1891); 83 C.J.S. Subrogation § 52. Any use by Chicago Title of the judgment lien against the trust property would render Chicago Title liable to the policy holders. Since Aetna, as subrogee of Chicago Title, would stand in Chicago Title's position, Aetna sustained no harm in the formal subordination.

Moreover, Chicago Title's obligations to the noteholders under the deeds of trust were recited as the basis for the bond from Aetna in the first instance. Aetna knew, by virtue of the application, that it was guaranteeing the release of the mechanic's lien, at least when the lien was declared valid. The lien was reduced to a judgment before Chicago Title's attorney wrote his letter of March 27, 1968, to Aetna, wherein he stated that "demand has been made upon Kansas City to remove this prior lien." By this time Chicago Title had taken the

---

3. The attorney's fees and costs in the instant proceeding are allowable as the indemnifying bond agrees to protect against fees and costs for "any other suit covering the subject matter."

4. We are unaware of any authority which would permit a judgment in excess of $13,000. Without the limitation provided by the bond, the amount due would exceed $14,300.

assignment of the judgment, but had not recorded same. It was not until April 10, 1968, that Chicago Title executed the subordination agreement, and this document was not recorded until May 13, 1968. In the interim Aetna did nothing. As far as Aetna knew from the attorney's letter of March 27, 1968, the demand to remove the lien could have come from the Fabinas pursuant to the title policy issued to them. In short, Aetna is now effectively estopped from complaining about Chicago Title's action in subordinating the judgment to the Fabina deed of trust.

■ Whether Aetna may have had some greater right if it had paid the Charles-Clarke Corporation directly, we need not decide since Aetna had obvious notice of Chicago Title's intent to do so. Furthermore, when the indemnifying bond was given, Aetna was chargeable with the knowledge that if the mechanic's lien was declared valid, thereby establishing a lien upon the property, the very purpose of the bond was to "release" the lien in favor of the Fabina deed of trust which was being closed at the time the bond was given. The act of subordination which took place two years later was no more than what the parties had agreed at the earlier date. If Aetna now pays Chicago Title, Aetna will stand in the same position it would have been had Aetna taken an assignment of the lien in 1966 when it gave the indemnifying bond. This is what Aetna's principals Venneri and Miotta, agreed to do with respect to the Fabina deed of trust. The mere· fact that Aetna, purportedly given financial assurance by Bender's signature on the application, did not thoroughly investigate the factual situation at the time it gave the surety bond, affords no relief to Aetna in the instant case.

■ The third-party defendants, Joseph Venneri and Bruno E. L. Miotta, were served with process on the third-party complaint on November 22, 1968, through the Secretary of the Commonwealth of Virginia under section 8–81.3 of the Code of Virginia. These third-party defendants have not appeared nor answered and are now in default, although no notation of default has been entered by the clerk. Miotta testified at the trial. As and when a default is properly noted, Aetna will be entitled to a judgment over against Venneri and Miotta.

As to the third-party defendant, John B. Fisher, he has answered the third-party complaint, was present at the trial on November 4, 1969, and testified at length. While his case has been fully heard, counsel for Aetna advised the court, by letter dated April 21, 1970, as follows:

"As counsel for Aetna Casualty and Surety Company, I do hereby dismiss with prejudice Aetna's claim against the third-party defendant John B. Fisher."

A judgment order may be presented for entry after endorsement of counsel.